## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| EBH TOPCO, LLC, *et al.*,[1] | Case No. 18-11212 (BLS) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket Nos. 15, 55, 116, and 148** |

**REPLY OF DEBTORS IN SUPPORT OF MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO OBTAIN SECURED POSTPETITION FINANCING, (II) AUTHORIZING THE USE OF CASH COLLATERAL, (III) GRANTING ADEQUATE PROTECTION, (IV) MODIFYING THE AUTOMATIC STAY, (V) SETTING A FINAL HEARING, AND (VI) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (the "**Debtors**") hereby submit this reply (the "**Reply**") in support of their motion for secured postpetition financing [Docket No. 15] (the "**DIP Motion**").[2] In support of the DIP Motion and this Reply, the Debtors, by and through their undersigned counsel, respectfully represent as follows:

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are EBH Topco, LLC (6103), Elements Behavioral Health, Inc. (7176), EBH Holding Company, Inc. (0370), EBH Big Rock, Inc. (1880), SoCal Rehab and Recovery, Inc. (3741), The Sexual Recovery Institute, Inc. (1279), Westside Sober Living Centers, Inc. (5717), Ehrman Subsidiary Corp. (3958), PROMAL2, Inc. (1377), PROMAL4, Inc. (2453), SBAR2, Inc. (9844), Promises Residential Treatment Center VI, Inc. (1112), Assurance Toxicology Services, LLC (9612), Elements Screening Services, Inc. (0055), TRS Behavioral Care, Inc. (6343), Spirit Lodge, LLC (1375), San Cristobal Treatment Center, LLC (1419), EBH Acquisition Subsidiary, Inc. (6132), EBH Services of Florida, Inc. (6802), Outpatient Services FL, Inc. (9596), EBH Northeast Services, Inc. (3551), Intensive Outpatient Services PA, Inc. (5581), Wrightsville Services, LLC (9535), NE Sober Living, Inc. (1955), Northeast Behavioral Services, Inc. (8881), The Ranch on Piney River, Inc. (0195), Outpatient Services TN, Inc. (5584), EBH Southwest Services, Inc. (5202), Elements Medical Group of Utah, Inc. (9820), Southeast Behavioral Health Services, Inc. (1267), Elements Medical Group of Mississippi, Inc. (4545), and Elements Medical Group of Arizona, Inc. (8468). The Debtors' mailing address is 5000 Airport Plaza Dr., Suite 100, Long Beach, California 90815.

[2]  Capitalized terms used but not defined in this Reply have the meaning given to them in the DIP Motion, Interim DIP Orders, and DIP Loan Documents, as applicable.

## PRELIMINARY STATEMENT

The DIP Facility is the result of substantial negotiations conducted in good faith and at arm's length. Prior to entering the DIP Credit Agreement and the filing of the Chapter 11 Cases, the Debtors and DIP Lender overcame significant obstacles regarding certain financing terms before arriving at a consensual agreement.

The Committee, through its Objection [Docket No. 148], seems to imply that the Debtors acquiesced to the demands of the DIP Lender to enter into a facility that contravenes the best interests of the Debtors, the Bankruptcy Code, and the applicable authority in this District. This is inaccurate. The terms of the DIP Facility are reasonable and have been approved previously in this and other courts. The financing provided by the DIP Facility is critical to the administration of these Chapter 11 Cases. Nothing in the DIP Facility is unusual or "non-market".

Since the Committee's formation, the Debtors have quickly responded to various information requests by the Committee, provided the Committee comprehensive information to the Committee, including: access to the Debtors' data room; furnishing documents related to the prepetition facilities and transactions, including other relevant information. This is in addition to that furnished by the DIP Lender including: debt, lien, and perfection documents in connection with the first lien position.

The terms of the DIP Credit Agreement, Interim Orders, and Final Order are reasonable and should be approved. A going-concern sale of the Debtors' assets will maximize recovery for all parties and is in the Debtors' best interests. The Committee's rhetoric focuses inordinately on the DIP Lender's ability to credit bid. Credit bidding itself is not nefarious, nor is the DIP Lender's purpose or attempt to credit bid in this case.[3]

---

[3] The proper time to evaluate the DIP Lender's ability to credit bid under Bankruptcy Code section 363(k) is at a later date, suffice to say at this point however, the Debtors believe there no evidence that cause could be found to

Nevertheless, in an effort to reach a compromise, as reflected in the proposed Final Order, the Debtors and DIP Lender have agreed to: (1) extend certain deadlines, including the Maturity Date, which will now be August 31, 2018; (2) increase the Committee's investigation budget from $25,000 to $100,000; (3) remove the termination event related to a challenge to the DIP Lender's ability to credit bid; and (4) increase the Carve-Out from $210,000 to $410,000, an amount that is sufficient for the Committee to discharge its statutory duties.

## **REPLY**

### I.    **Entry into the DIP Facility is an Appropriate Exercise of the Debtor's Business Judgment**

1.    The Debtors have a business need for postpetition financing.[4] *Trans World Airlines, Inc. v. Travellers Int'l AG (In re Trans World Airlines, Inc.)*, 163 B.R. 964, 974 (Bankr. D. Del. 1994). *See also In re Integrated Resources, Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) ("Courts are loath to interfere with corporate decisions absent a showing of bad faith, self – interest, or gross negligence.") (citing *Smith v. Van Gorkom*, 488 A.2d 858, 872-73 (Del. 1984)); *Crystalin, LLC v. Selma Props. Inc. (In re Crystalin, LLC)*, 293 B.R. 455, 463064 (B.A.P. 8th Cir. 2003) (finding that the business judgment standard is met "as long as the proposed action *appears* to enhance the debtor's estate"). As noted in *Los Angeles Dodgers*:

---

limit such right. *Cohen v. KB Mezzanine Fund II, LP (In re SubMicron Sys. Corp.)*, 432 F.3d 448, 461 (3d Cir. 2006). *See, e.g.*, *In re Aeropostale, Inc.*, 555 B.R. 369 (Bankr. S.D.N.Y. 2016). *See also In re Olde Prairie Block Owner, LLC*, 464 B.R. 337, 348 (Bankr. N.D. Ill. 2011); *In re River Road Hotel Partners, LLC*, 2010 WL 66346003, at *1 (Bankr. N.D. Ill. Oct. 5, 2010), *aff'd*, *River Road Hotel Partners, LLC v. Amalgamated Bank*, 651 F.3d 642 (7th Cir. 2011), *aff'd*, *RadLAX*, 566 U.S. 639 (212) ; *In re N.J. Affordable Homes Corp.*, 2006 WL 2128624, at *16 (Bankr. D.N.J. June 29, 2006). Whether a buyer uses cash or reduction of secured debt is inconsequential, *see, e.g.*, *In re Finova Capital Corp.*, 356 B.R. 609, 625 (Bankr. D. Del. 2006), which is why courts are loathe to limit credit bidding without a compelling reason to do so. *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 644 n.2 (2012) ("The ability to credit-bid helps to protect a creditor against the risk that its collateral will be sold at a depressed price. It enables the creditor to purchase the collateral for what it considers the fair market price (up to the amount of its security interest) without committing additional cash to protect the loan.").

[4]    The Objection recognizes this need exists but attempts to rewrite the law regarding Bankruptcy Code section 364. For example, the Objection contends that the DIP Facility should not be approved because it does not benefit the entire creditor body and that it is being used to benefit the position of a particular creditor. Objection ¶ 5. However, the authority cited for this precedent is much more nuanced. *In re Mid-State Raceway, Inc.*, 323 B.R. 40, 60 (Bankr. N.D.N.Y. 2005) (applying five factors to postpetition financing evaluation).

> [C]ourts will almost always defer to the business judgment of a debtor in the selection of the lender. The business judgment rule is a standard of judicial review designed to protect the wide latitude conferred on a board of directors in handling the affairs of the corporate enterprise. The rule refers to the judicial policy of deferring to the business judgment of corporate directors in the exercise of their broad discretion in making corporate decisions. Under the rule, courts will not second-guess a business decision, so long as corporate management exercised a minimum level of care in arriving at the decision. The business judgment rule under Delaware law and the law of numerous other jurisdictions establishes a presumption that in making a business decision, the directors of a corporation acted on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the company.
>
> Under this formulation, the business judgment rule governs unless the opposing party can show one of four elements: (1) the directors did not in fact make a decision, (2) the directors' decision was uninformed; (3) the directors were not disinterested or independent; or (4) the directors were grossly negligent. Baseball relies on the third exception to argue that the business judgment rule does not apply

*In re Los Angeles Dodgers LLC*, 457 B.R.457 B.R 308, 313 (Bankr. D. Del. 2011). *See also In re Barbara K. Enters., Inc.*, Case No. 08-11474, 2008 WL 2439649, at * 14 (Bankr. S.D.N.Y. 2008) (noting that bankruptcy courts will defer to a debtor's business judgment "so long as a request for financing does not 'leverage the bankruptcy process' and unfairly cede control of the reorganization to one party in interest") (quoting *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990)); *In re Farmland Indus., Inc.*, 294 B.R. 855, 881 (Bankr. W.D. Mo. 2003). Additionally, no alternative funding or funding on an unsecured basis exists at this time. *See, e.g.*, *In re Los Angeles Dodgers LLC*, 457 B.R. 308 (Bankr. D. Del. 2011) (denying postpetition secured financing when alternative funding was available).

2.      The Committee has not, and cannot, argue that the Debtors have not exercised their sound business judgment in the decision to enter the DIP Facility. The DIP Facility does not leverage the bankruptcy process nor does it unfairly cede control to the DIP Lender. Instead, the DIP Facility is the best and only opportunity for the Debtors to obtain postpetition financing. As

64214436.6

set forth below, the terms of the DIP Facility are reasonable to preserve the estate of the Debtors, thus will benefit all creditors. This determination should be afforded deference.

## II.    The Terms of the DIP Facility Are Reasonable

3.    The Objection fails to recognize that the DIP Facility reflects hard fought negotiations between the Debtors and DIP Lender given the Debtors' prepetition capital structure. The terms contained in the DIP Facility are objectively reasonable and reflect a carefully orchestrated balance between funding the Debtors' operations during the Chapter 11 Case and providing the DIP Lender with adequate protection.

4.    Although the Objection recognizes that the Debtors require postpetition financing, it nevertheless fails to recognize that the DIP Lender would not provide financing without the current terms.[5] The Committee does not have the ability to veto certain provisions that do not fully comport with its interests. No such term is so egregious as to deny the DIP Motion. *See generally Adelphia Commc'ns Corp.*, 2004 WL 1634538, at *2 (Bankr. S.D.N.Y. June 22, 2004) ("Determining whether proceeding with a financing which is subject to conditions makes sense is likewise a classic business decision."). Without postpetition financing, all parties in interest would suffer.[6] The Debtors thus respectfully submit that the Final Order should be entered.

### A.    The Termination Events are Appropriate

5.    The Committee's objection to termination events related to the upcoming sales process is unfounded. Postpetition financing termination events tied to a sale process are

---

[5]  Bankruptcy Code section 364 recognizes that concessions by debtors are required to obtain postpetition financing. For example, debtors are required to seek unsecured financing first. 11 U.S.C. 364(c). The ideal situation for the Debtors would be postpetition financing which was unsecured, interest-free, and without any conditions. However, the real world requires concessions. The DIP Facility would not be available without the terms the Committee finds unacceptable, but the Debtors have determined that, in their business judgment, these concessions are necessary to obtain the postpetition financing needed.

[6]  Even in the unlikely scenario a third party was willing to offer postpetition financing, the Prepetition First Lien Lender would not agree to be primed. The resulting priming fight would cause undue delay and irreparably harm the Debtors' estates. *See, e.g., In re YL West 87th Holdings I, LLC*, 423 B.R. 421 (Bankr. S.D.N.Y. 2010).

perfectly reasonable and comport with the practice in this District. *See, e.g.*, *In re Bertucci's Holdings, Inc.*, Case No. 18-10894 (MFW), Docket No. 181 (Bankr. D. Del. May 7, 2018); *In re VER Technologies Holdco LLC*, Case No. 18-10834 (KG), Docket No. 232 (Bankr. D. Del. May 4, 2018); *In re The Bon-Ton Stores, Inc.*, Case No. 18-10248 (MFW), Docket No. 352 (Bankr. D. Del. Mar. 12, 2018); *In re SeaStar Holdings, Inc.*, Case No. 18-10039 (CSS), Docket No. 113 (Bankr. D. Del. Jan. 29, 2018); *In re Ciber, Inc.*, Case No. 17-10772 (BLS), Docket No. 151 (Bankr. D. Del. May 2, 2017); *In re Event Rentals, Inc.*, Case No. 14-10282 (PJW), Docket No. 277 (Bankr. D. Del. Apr. 1, 2014); *In re Nirvanix, Inc.*, Case No. 13-12595(BLS) (Bankr. D. Del. Oct. 23, 2012).

6.     The Debtors intend to move through the bankruptcy process as quickly and efficiently as possible in light of the facts and circumstances of these cases. To do otherwise will unnecessarily cause the estates to incur expenses and risk significant damage to the estates. *See, e.g.*, *Bittner v. Borne Chem. Co., Inc.*, 691 F.2d 134, 137 (3d Cir. 1982). As noted before this Court, and acknowledged by the Committee, the longer the Debtors remain in bankruptcy, the more damaging the impact on census, negatively impacting the Debtors' cash flow and making the Debtors' assets less attractive to potential buyers. The Debtors and DIP Lender have already agreed to extend certain deadlines based on feedback from certain parties in interest. The new proposed timeline and related DIP milestones are no less reasonable than the above-referenced cases. The assets were marketed prepetition for nearly five months and the current timeline provides approximately another two months of postpetition marketing.

7.     The Committee also objects to the termination events related to an alternate transaction. Simply put, the DIP Lender is also the Stalking Horse Purchaser. If the Debtor selects another purchaser at the conclusion of the auction, it is unreasonable to expect the DIP

Lender to continue lending under the current terms. The Debtors and the new purchaser would negotiate alternative financing to fund the Chapter 11 Cases going forward.

8.      Finally, grants of adequate protection may take many forms and is determined on a case-by-case basis. *See In re Continental Airlines, Inc.*, 154 B.R. 176, 180-81 (Bankr. D. Del. 1993). Here, the Prepetition First Lien Lender is receiving assurance that the Chapter 11 Cases will expeditiously move through the bankruptcy process in exchange for the use of their collateral. The DIP Lender is not willing to lend on any other terms.

9.      Together, the APA and DIP Credit Agreement represent a comprehensive process to move through the bankruptcy process; it is entirely reasonably that terms under one may be tied to the other. If the Debtors determine in their business judgment that another transaction is in their best interest, the DIP Facility will terminate and the Debtor must find alternative funding. The cross-default provisions do not give the DIP Lender an unfair advantage or control over the process.[7] Delays in the sales process will increase administrative expenses beyond the amount provided by the DIP Facility. This will harm all parties in interest as the estate will be threatened with administrative insolvency.

10.     The Debtors, along with their professionals, have determined that: the milestones are achievable; extensions will not result in additional or better bids; and the milestones are necessary to protect the value of the estate. The termination events are market and required by

---

[7]  To accept the Committee's hypothetical arguments that potential bid chilling is a reason to strike these provisions would eviscerate the Bankruptcy Code. For example, Bankruptcy Code section 363(k) allows parties to credit bid. *See also RadLAX*, 566 U.S. at 644. To some extent, all credit bidding chills bidding. *See, e.g.*, *In re Spa Chakra*, Case No. 09-17260 (SMB), 2010 WL 779270, at *6 (Bankr. S.D.N.Y.) (recognizing that the claim of the prepetition secured lender who also provided postpetition lending chilled bidding because its right to credit bid far exceeded the value of the debtor's assets); *In re RML Dev., Inc.*, 528 B.R. 150 (Bankr. W.D. Tenn. 2014). *See also* American Bankruptcy Institute Commission to Study the Reform of Chapter 11, 2012-2014 Final Report and Recommendations 147 (2014), *available at* http://commission.abi.org/full-report. (finding "that all credit bidding chills an auction process to some extent. Accordingly, the Commissioners did not believe that chilling effect of credit bids alone should suffice as cause under section 363(k)."). Just because some bid chilling may occur because the APA and DIP Credit Agreement are tied together is not sufficient to strike these provisions.

the DIP Lender. *See, e.g.*, *In re The Weinstein Company Holdings, LLC*, Case No. 18-10601 (MFW), Docket No. 267 (Bankr. D. Del. Apr. 19, 2018).

B.    **Professional Fee and Carve-Out Provisions are Appropriate**

11.    The initial budgets filed with the DIP Motion contemplated a professional carve out for the Committee professionals of $210,000. This is a sale case with relatively few items for the Committee to negotiate. The Committee's primary responsibilities are working with the Debtors to create a reasonable timeline for the sale process (which is already completed), investigating the prepetition liens and transactions regarding potential claims, and participating the auction process in an attempt to maximize value for the Estates.

12.    The Debtors and the DIP Lender recognize that the Committee must perform its relatively limited statutory duties. In response to the Committee's concerns, the DIP Lender has increased to increase the proposed carve out from $210,000 to $410,000, a nearly 100% increase. The Debtors submit that this carve-out is appropriate given the timeline and circumstances of this case.

C.    **Section 364(e) Finding is Limited**

13.    The DIP Lender is entitled to the protections afforded by Bankruptcy Code section 364(e). The purpose of this provision is "to encourage postpetition financing by . . . giving the lender priority . . . [and] protect[ing] the authorization for priority on a lien from reversal or modification on appeal, as long as the order has not been stayed pending appeal and the creditor extended credit in good faith." *In re Ellingsen MacLean Oil Co., Inc.*, 834 F.2d 599, 603 (6th Cir. 1987). As set forth above and in the First Day Declaration, the DIP Facility was negotiated at arm's length between the Debtors and the DIP Lender with each party working in good faith. The fact that the DIP Lender is also the Stalking Horse has no bearing on good faith. *See, e.g.*, *In re Pan Am. Corp.*, 1992 WL 154200, at *2-5 (S.D.N.Y. 1992) (finding that

postpetition lender who lent funds to protect the debtor's assets did not act with an improper motive and could receive the protections of Bankruptcy Code section 364(e)).

14.    Good faith findings are common in postpetition financing orders. *See, e.g.*, *In re Videology, Inc.*, Case No. 18-11120 (BLS), Docket No. 161 (Bankr. D. Del. June 5, 2018); *In re VER Technologies Holdco LLC*, Case No. 18-10834 (KG), Docket No. 232 (Bankr. D. Del. May 4, 2018); *In re Gibson Brands, Inc.*, Case No. 18-11025 (CSS), Docket No. 220 (Bankr. D. Del. May 31, 2018); *In re Claire's Stores, Inc.*, Case No. 18-10584 (MFW), Docket No. 318 (Bankr. D. Del. Apr. 24, 2018); *In re The Weinstein Company Holdings, LLC*, Case No. 18-10601 (MFW), Docket No. 267 (Bankr. D. Del. Apr. 19, 2018); *In re Remington Outdoor Company, Inc.*, Case No. 18-10684 (BLS), Docket No. 177 (Bankr. D. Del. Apr. 16, 2018); *In re Orexigen Therapeutics, Inc.*, Case No. 18-10518 (KG), Docket No. 189 (Bankr. D. Del. Apr. 13, 2018); *In re The Bon-Ton Stores, Inc.*, Case No. 18-10248 (MFW), Docket No. 352 (Bankr. D. Del. Mar. 12, 2018); *In re Patriot National, Inc.*, Case No. 18-10189 (KG), Docket No. 297 (Bankr. D. Del. Mar. 6, 2018); *In re Rand Logistics, Inc.*, Case No. 18-10175 (BLS), Docket No. 149 (Bankr. D. Del. Feb. 27, 2018).

15.    The finding in the Final Order is limited and applies only to the Prepetition First Lien Lender as the DIP Lender.

**III.    The DIP Lender Collateral is Appropriate**

   **A.    Section 506(c) and Section 552(b) Waivers Are Appropriate**

16.    The Committee's assertions regarding the Debtor's waiver of Bankruptcy Code section 506(c) is questionable at best. The Supreme Court has established that claims under Bankruptcy Code section 506(c) belong to the Debtor's estate. *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000). *See also Smart World Techs., LLC v. Juno Online Servs., Inc. (In re Smart World Techs., LLC)*, 423 F.3d 166, 181 (2d Cir. 2005).

64214436.6

17.    A waiver of Bankruptcy Code section 506(c) is appropriate among sophisticated parties as part of a comprehensive agreement regarding postpetition financing. As such, bankruptcy courts have found such provisions to be valid on a regular basis as these waivers.[8] *See, e.g.*, *In re Videology, Inc.*, Case No. 18-11120 (BLS), Docket No. 161 (Bankr. D. Del. June 5, 2018); *In re VER Technologies Holdco LLC*, Case No. 18-10834 (KG), Docket No. 232 (Bankr. D. Del. May 4, 2018); *In re The Weinstein Company Holdings, LLC*, Case No. 18-10601 (MFW), Docket No. 267 (Bankr. D. Del. Apr. 19, 2018); *In re Remington Outdoor Company, Inc.*, Case No. 18-10684 (BLS), Docket No. 177 (Bankr. D. Del. Apr. 16, 2018); *In re The Bon-Ton Stores, Inc.*, Case No. 18-10248 (MFW), Docket No. 352 (Bankr. D. Del. Mar. 12, 2018); *In re Patriot National, Inc.*, Case No. 18-10189 (KG), Docket No. 297 (Bankr. D. Del. Mar. 6, 2018); *In re SeaStar Holdings, Inc.*, Case No. 18-10039 (CSS), Docket No. 113 (Bankr. D. Del. Jan. 29, 2018); *In re Rotech Healthcare, Inc.*, Case. No. 13-10741 (PJW) (Bankr. D. Del. May 14, 2013); *In re Namco, LLC*, Case No. 13-10610 (PJW) (Bankr. D. Del. May 7, 2013); *In re School Specialty, Inc.*, Case No. 13-10125 (KJC) (Bankr. D. Del. Feb. 26, 2013). *See also In re Residential Capital, LLC*, 501 B.R. 549, 604 (Bankr. S.D.N.Y. 2013) (finding that debtors waived their Bankruptcy Code section 506(c) rights in a cash collateral order).

18.    Here, the Bankruptcy Code section 506(c) waiver constitutes appropriate consideration in exchange for the access to the DIP Facility. The Debtors respectfully submit that because any Bankruptcy Code section 506(c) claims belong to the estate, it is within their business judgment to waive such rights as it is appropriate under the circumstances. *See, e.g.*, *In re Antico Mfg. Co.*, 31 B.R. 103, 106 n.1 (Bankr. E.D.N.Y. 1983) ("[c]ertainly, the paragraph in

---

[8]    It is worth noting that the Committee cited no case in the last twenty years that did not permit a waiver of Bankruptcy Code section 506(c).

64214436.6

question [regarding Bankruptcy Code section 506(c)] is not so detrimental or improper as to jeopardize the loss of the entire financial package.").

19.     Similarly, waivers of Bankruptcy Code section 552(b)'s "equities of the case" exception are just as common.[9] Bankruptcy Code section 552(b) provides that a perfected lien on prepetition collateral extends to postpetition proceeds of such collateral unless the court orders otherwise based on the equities of the case. *See In re Gen Growth Props.*, 412 B.R. 122, 129 (Bankr. S.D.N.Y. 2009) ("In light of the Lenders' agreement to subordinate their liens and superpriority claims to the Carve-Out, the Lenders are entitled to a waiver of . . . any 'equities of the case' claims under section 552(b) of the Bankruptcy Code . . ."). These waivers are routinely granted when, as is present here, they are subject to the Carve-Out and are part of the adequate protection package for the postpetition lender. *See, e.g., In re Videology, Inc.*, Case No. 18-11120 (BLS), Docket No. 161 (Bankr. D. Del. June 5, 2018); *In re VER Technologies Holdco LLC*, Case No. 18-10834 (KG), Docket No. 232 (Bankr. D. Del. May 4, 2018); *In re The Weinstein Company Holdings, LLC*, Case No. 18-10601 (MFW), Docket No. 267 (Bankr. D. Del. Apr. 19, 2018); *In re Remington Outdoor Company, Inc.*, Case No. 18-10684 (BLS), Docket No. 177 (Bankr. D. Del. Apr. 16, 2018); *In re Orexigen Therapeutics, Inc.*, Case No. 18-10518 (KG), Docket No. 189 (Bankr. D. Del. Apr. 13, 2018); *In re The Bon-Ton Stores, Inc.*, Case No. 18-10248 (MFW), Docket No. 352 (Bankr. D. Del. Mar. 12, 2018); *In re Patriot National, Inc.*, Case No. 18-10189 (KG), Docket No. 297 (Bankr. D. Del. Mar. 6, 2018); *In re SeaStar Holdings, Inc.*, Case No. 18-10039 (CSS), Docket No. 113 (Bankr. D. Del. Jan. 29, 2018); *In re Exide Techs.*, Case No. 13-11482 (KJC) (Bankr. D. Del. July 25, 2013).

---

[9] The Committee argues that a waiver Bankruptcy Code section 552(b) is inappropriate but suggests no facts which would warrant such a finding or how the exception would apply to the present case.

64214436.6

20.     Therefore, the Debtors are also able to validly waive the equities of the case exception.

**B.     Liens on Avoidance Actions and Commercial Tort Claims**

21.     The Committee objects to the proposed liens on avoidance actions and commercial tort claims. Despite the Committee's suggestion that to grant these liens would "turn bankruptcy law on its head", like the other terms of the DIP Facility, this type of adequate protection is common. *See, e.g.*, *In re PES Holdings, LLC*, Case No. 18-10122, Docket No. 218 (Bankr. D. Del. Feb. 27, 2018); *In re GST AutoLeather, Inc.*, Case No. 17-12100 (LSS) (Bankr. D. Del. Nov. 15, 2017); *In re American Apparel, LLC*, Case No. 16-12551 (BLS), Docket No. 299 (Bankr. D. Del. Dec. 12, 2016); *In re Variant holding Company, LLC*, Case No. 14-12021 (BLS), Docket No. 182 (Bankr. D. Del. Nov. 17, 2014); *In re Conexant Sys., Inc.*, Case No. 13-10125(KJC), Docket No. 203 (Bankr. D. Del. Apr. 19, 2013).

22.     The avoidance actions and commercial tort claims are the only assets of the Debtors which are unencumbered. Because postpetition financing may be secured by "property of the estate," 11 U.S.C. § 364(c)(2), the DIP Lender, in exchange for providing the DIP Facility, should be granted liens on the avoidance actions and commercial tort claims. *See generally In re Dairy Mart Convenience Stores, Inc.*, 351 F.3d 86, 90 (2d Cir. 2003). This comports with the purpose of Bankruptcy Code section 364, by allowing the Debtors to provide the DIP Lender "incentives to . . . extend post-petition credit." *Ellingsen*, 834 F.2d at 603.

23.     Like Bankruptcy Code section 506(c) waivers, the proceeds of avoidance actions are property of the Debtors' estate, and may be pledged as security. *See* 11 U.S.C. § 541(a)(3) and (a)(4). At the very least, the DIP Lender should be able to place liens upon the proceeds of avoidance actions, *e.g.*, *In re Edu. Holdings 1, Inc.*, Case No. 13-10101 (BLS) (Bankr. D. Del.

Feb. 7, 2013),[10] and commercial tort claims, *e.g.*, *In re CB Holding, Corp.*, 447 B.R. 222, 228-29 (Bankr. D. Del. 2010). No applicable authority, despite any contention by the Committee to the contrary, has found that general unsecured creditors are exclusively entitled to avoidance action proceeds. *See Mellon Bank N.A. v. Dick Corp.*, 351 F.3d 290, 293 (7th Cir. 2003) ("Lest this way of resolving the issue be taken to assume that § 550(a) requires that some benefit flow to unsecured creditors, we add that the statute does not say this. Section 550(a) speaks of benefit to *the estate* — which in bankruptcy parlance denotes the set of all potentially interested parties — rather than to any particular class of creditors."); *In re Physiotherapy Holdings, Inc.*, Case No. 13-12965 (KG), 2017 WL 5054308, at *8 (Bankr. D. Del. Nov. 1, 2017) ("The estate is more than the interest of creditors."); *Rafool v. Propack Sys., LLC (In re Fleming Packaging Corp.)*, Case No. 03-82308, 2007 WL 4556985, at *6 (Bankr. C.D. Ill. 2007) ("This Court does not consider Section 550(a)'s 'for the benefit of the estate' phraseology as a statutory requirement that the unsecured creditors benefit directly from the recovery of an avoidance transfer, *i.e.*, that the recovered funds end up in the pockets of the unsecured creditors."); *In re Applied Theory Corp.*, Case No. 02-11868 (REG), 2008 WL 1869770, at *1 (Bankr. S.D.N.Y. Apr. 24, 2008) ("Of course those assets started out unencumbered. But those assets can thereafter be encumbered (or made available to satisfy superpriority claims), if necessary to provide adequate protection. That's expressly authorized under section 361(2).").

24.      Allowing the DIP Lender liens on avoidance actions and commercial tort claims, and their proceeds is a valid means of adequate protection in this case.

---

[10]  *See also In re Gibson Brands, Inc.*, Case No. 18-11025 (CSS), Docket No. 220 (Bankr. D. Del. May 31, 2018) (granting liens on avoidance action proceeds); *In re Claire's Stores, Inc.*, Case No. 18-10584 (MFW), Docket No. 318 (Bankr. D. Del. Apr. 24, 2018) (same); *In re General Wireless Operations Inc.*, Case No. 17-10506 (BLS), Docket No. 906 (Bankr. D. Del. Aug. 16, 2017) (same).

**C.    The Prohibition Against Marshalling is Appropriate**

25.    Prohibitions against marshalling are common in this district. *See, e.g.*, *In re VER Technologies Holdco LLC*, Case No. 18-10834 (KG), Docket No. 232 (Bankr. D. Del. May 4, 2018); *In re Orexigen Therapeutics, Inc.*, Case No. 18-10518 (KG), Docket No. 189 (Bankr. D. Del. Apr. 13, 2018); *In re Exide Techs.*, Case No. 13-11482 (KJC) (Bankr. D. Del. July 25, 2013).

26.    Moreover, the Committee has no basis for its objection because "unsecured creditors cannot invoke the equitable doctrine of marshaling." *In re Advanced Mkt. Servs., Inc.*, 360 B.R. 421, 427 (Bankr. D. Del. 2007); *In re Yenkin-Majestic Paint Corp. v. Wheeling-Pittsburgh Steel Corp. (In re Pittsburgh-Canfield Corp.)*, 309 B.R. 277, 291 (B.A.P. 6th Cir. 2004) ("unsecured creditors cannot invoke the equitable doctrine of marshaling."). Also, marshaling claims belong to the estate, not the creditors. *See Official Comm. of Unsecured Creditors of America's Hobby Ctr. v. Hudson United Bank (In re America's Hobby Ctr.)*, 223 B.R. 275, 287-88 (Bankr. S.D.N.Y. 1998). No secured party has objected to the marshaling waiver.

**D.    Automatic Stay Modification is Appropriate**

27.    As of the Petition Date, the original terms of the DIP Facility contemplated a cure period of three (3) business days for virtually all major defaults. After negotiations with the Office of the United States Trustee, the DIP Lender agreed to extend each of those cure periods to five (5) business days.

28.    In the event of an alleged default or other dispute between the DIP Lender and the Debtors, the Debtors have approximately one week to file paper and seek relief from this Court regarding the alleged default. This is a reasonable opportunity and provides the Debtors and the Committee with sufficient time and protection. *See, e.g.*, *In re Videology, Inc.*, Case No. 18-

14

11120 (BLS), Docket No. 161 (Bankr. D. Del. June 5, 2018); *In re Gibson Brands, Inc.*, Case No. 18-11025 (CSS), Docket No. 220 (Bankr. D. Del. May 31, 2018); *In re VER Technologies Holdco LLC*, Case No. 18-10834 (KG), Docket No. 232 (Bankr. D. Del. May 4, 2018); *In re The Weinstein Company Holdings, LLC*, Case No. 18-10601 (MFW), Docket No. 267 (Bankr. D. Del. Apr. 19, 2018); *In re Remington Outdoor Company, Inc.*, Case No. 18-10684 (BLS), Docket No. 177 (Bankr. D. Del. Apr. 16, 2018); *In re The Bon-Ton Stores, Inc.*, Case No. 18-10248 (MFW), Docket No. 352 (Bankr. D. Del. Mar. 12, 2018); *In re Patriot National, Inc.*, Case No. 18-10189 (KG), Docket No. 297 (Bankr. D. Del. Mar. 6, 2018).

29.     This provision of the Final Order is common and should be approved.

**E.     The DIP Fees are Reasonable**

30.     With no support or evidence, the Committee alleges that the Commitment Fee and Unused Line Item Fee must be stricken. These fees are part of an entire agreement for the DIP Facility and reflect the most favorable terms available to the Debtors.

31.     The DIP Facility originally provided for a 3% Commitment Fee and, after prepetition negotiations with the Debtors, the DIP Lender agreed to reduce it to 1.5%. The DIP Facility provides for a 0.5% Unused Line Item Fee. Both are reasonable and typical in DIP financings. *See, e.g.*, *In re Lily Robotics*, Case No. 17-10426 (KJC), Docket No. 359 (Bankr. D. Del. June 26, 2017) (commitment fee of 5%); *In re RadioShack Corporation*, Case No. 15-10197, Docket No. 947 (Bankr. D. Del. Mar. 12, 2015) (0.5% unused line item fee).

**F.     Sale Proceeds**

32.     The payment of proceeds of an Alternative Transaction immediately to the DIP Lender are also typical. *See, e.g.*, *In re The Weinstein Company Holdings, LLC*, Case No. 18-10601 (MFW), Docket No. 267 (Bankr. D. Del. Apr. 19, 2018); *In re Brookstone Holdings*

*Corp.*, Case No. 14-10752, Docket No. 245 (Bankr. D. Del. Apr. 25, 2014); *In re iGPS Company LLC*, Case No.13-11459 (KG), Docket No. 225 (Bankr. D. Del. July 1, 2013).

      **G.**      **DIP Budget**

      33.      Due to the aforementioned extensions to the milestones by the DIP Lender and Debtors, funding must now run through August 31, 2018. To accommodate this difference, the size of the DIP Facility in the proposed Final Order will be increased from $14.2 million to $14.9 million.

      **H.**      **Notice to the Committee**

      34.      The proposed Final Order will provide the same notice to the Committee as the DIP Lender receives.

**IV.**      **Conclusion**

      35.      The DIP Facility is the only available option to stabilize the Debtors' affairs and ensure that they are able to proceed through the Chapter 11 Cases with sufficient liquidity. The Debtors, through their professionals, attempted to negotiate the most favorable terms possible. The Debtors believe, in their business judgment, the DIP Facility as a whole, represents the best financing available. Thus, the Debtors respectfully submit that the Objection should be overruled and the Final Order entered.

*[The remainder of this page intentionally left blank]*

**WHEREFORE**, the Debtors respectfully requests that the Court grant the relief requested in the DIP Motion and such other and further relief as is just and proper.

Dated: June 25, 2018
       Wilmington, Delaware

Respectfully submitted,

**POLSINELLI PC**

*/s/ Christopher A. Ward*
Christopher A. Ward (Del. Bar No. 3877)
Shanti M. Katona (Del. Bar No. 5352)
Stephen J. Astringer (Del. Bar No. 6375)
222 Delaware Avenue, Suite 1101
Wilmington, Delaware 19801
Telephone: (302) 252-0920
Facsimile: (302) 252-0921
cward@polsinelli.com
skatona@polsinelli.com
sastringer@polsinelli.com

-and-

Jeremy R. Johnson (Admitted *Pro Hac Vice*)
600 3rd Avenue, 42nd Floor
New York, New York 10016
Telephone: (212) 684-0199
Facsimile: (212) 684-0197
jeremy.johnson@polsinelli.com

*Proposed Counsel to the Debtors and Debtors in Possession*

64214436.6