IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>EBH TOPCO, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 18-11212 (BLS)<br><br>(Jointly Administered)<br><br>**Re: D.I. 161 & 162** |

## PRELIMINARY RESPONSE OF DIP LENDER AND STALKING HORSE BIDDER TO COMMITTEE'S EMERGENCY 2004 MOTION

Project Build Behavioral Health, LLC ("PBBH") and Blue Mountain (defined below) responds as follows:

*Communications Immediately Prior to Rule 2004 Motion*

Late on Friday, June 22, 2018, after the close of business, the Official Committee of Unsecured Creditors in the above-captioned cases (the "Committee") served PBBH, BlueMountain Capital Management, and certain affiliates and related entities (collectively, "Blue Mountain"), and other parties (collectively designated as the "Rule 2004 Parties") with the Committee's motion to undertake an examination under Bankruptcy Rule 2004 (the "2004 Motion"), and sought approval on an expedited basis at the hearing currently scheduled for June

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are EBH Topco, LLC (6103), Elements Behavioral Health, Inc. (7176), EBH Holding Company, Inc. (0370), EBH Big Rock, Inc. (1880), SoCal Rehab and Recovery, Inc. (3741), The Sexual Recovery Institute, Inc. (1279), Westside Sober Living Centers, Inc. (5717), Ehrman Subsidiary Corp. (3958), PROMAL2, Inc. (1377), PROMAL4, Inc. (2453), SBAR2, Inc. (9844), Promises Residential Treatment Center VI, Inc. (1112), Assurance Toxicology Services, LLC (9612), Elements Screening Services, Inc. (0055), TRS Behavioral Care, Inc. (6343), Spirit Lodge, LLC (1375), San Cristobal Treatment Center, LLC (1419), EBH Acquisition Subsidiary, Inc. (6132), EBH Services of Florida, Inc. (6802), Outpatient Services FL, Inc. (9596), EBH Northeast Services, Inc. (3551), Intensive Outpatient Services PA, Inc. (5581), Wrightsville Services, LLC (9535), NE Sober Living, Inc. (1955), Northeast Behavioral Services, Inc. (8881), The Ranch on Piney River, Inc. (0195), Outpatient Services TN, Inc. (5584), EBH Southwest Services, Inc. (5202), Elements Medical Group of Utah, Inc. (9820), Southeast Behavioral Health Services, Inc. (1267), Elements Medical Group of Mississippi, Inc. (4545), and Elements Medical Group of Arizona, Inc. (8468). The Debtors' mailing address is 5000 Airport Plaza Dr., Suite 100, Long Beach, California 90815.

26, 2018. [D.I. 161 & 162] The Rule 2004 Parties object to the Committee's motion to shorten notice and file this preliminary response to provide context for the Court and hopefully to dispose of this matter in advance of the June 26 hearing.[2]

      As the Court is aware, the Rule 2004 Parties, by and through PBBH, are financing these cases through their debtor-in-possession loan and have established a floor for a sale transaction through their the stalking horse bid. PBBH also owns 100% of the prepetition first-lien debt issued by the Debtors, and have agreed with the Debtors to credit bid a portion of that debt (along with the DIP loan) as part of its initial stalking horse bid. Because of PBBH's position in the Debtors' capital structure, the Committee (unfortunately, but not surprisingly) has targeted the Rule 2004 Parties to extract value in these cases. The Committee also has (without basis in fact) suggested that somehow PBBH's funding of a sale process and stalking horse bid for the Debtors' assets is both illegitimate and unseemly. As evidenced by the litany of overreaching demands set forth in the Rule 2004 Motion, the Committee prefers to misuse Bankruptcy Rule 2004 in a transparent attempt to create obstacles for the Rule 2004 Parties, rather than as a means to investigate the acts, conduct, property, liabilities, or financial condition of the Debtors (the Rule's proper purpose). The timeline reflects this attempt.

      Notwithstanding entry of the Bid Procedures Order (*with the Committee's consent*) on June 13, counsel for the Committee waited until Wednesday, June 20 to contact counsel for PBBH to discuss the Committee's position on the case. As part of that conversation, counsel for the Committee suggested an approach that simply ignored the realities of the Debtors' financial situation and overwhelming debt load. Then, on Friday, June 22, 2018, counsel for the Committee again contacted counsel for PBBH as part of a "meet and confer" to discuss the

---

[2] The Rule 2004 Parties reserve the right to file a full response to the 2004 Motion and the accompanying motion to expedite.

Committee's information requests. During that conversation, counsel for the Committee communicated that the Committee would seek from PBBH "all documents and other information" relating to the "transaction," without elaborating further. In light of the extremely broad and open-ended nature of such a request, counsel for PBBH asked for the request in writing. Counsel sent the request in writing on June 22 at 12:14 p.m., Eastern Time, attached hereto as Exhibit A. Counsel for PBBH responded to the request on June 22 at 3:25 p.m., Eastern Time, attached hereto as Exhibit B, as follows:

> Michael, having just received this three hours ago, I cannot commit that we will be in a position to respond today.
> This is extremely broad, and it is not clear which of these requests actually relate to my client or to the bankruptcy cases.
> In the meantime, please advise:
> (a) Is this request in connection with the Committee's lien investigation? If so, I note that we already have sent voluminous materials, and at least from a preliminary review, I do not perceive the relevance of this request in relation to the Committee's lien investigation.
> (b) If not in connection with the Committee's lien investigation, what is the specific purpose of this request? We are being asked to devote a lot of time, money and other resources to this and it is not unfair to understand what exactly the Committee believes it can learn from these requests that would be relevant to the bankruptcy cases.
> (c) Has the Committee made the same request on the Debtors or any other parties? If so, please advise what efforts are being made to avoid duplication of costs and effort.
>
> Thank you.

Counsel for the Committee never responded to the foregoing communication and never indicated they would be filing the Rule 2004 Motion. Instead, and contrary to the Court's rules, the next thing PBBH received from the Committee was the Rule 2004 Motion at 7:52 p.m., Eastern Time, that evening.

*The Committee's Overbroad and Irrelevant Production Requests and Examination Topics*

The attachments to the Rule 2004 Motion set forth *31* Requests for Production and *7* Examination topics. Of these Requests, upon an initial review, at least 10 do not relate to the Rule 2004 Parties. Other Requests relate to PBBH's purchase of the first-lien debt, a third-party transaction in which the Debtors did not participate. Several other Requests should be easily

3

obtainable from the Debtors in the first instance.  Many (if not most) of the Requests are vague, overbroad, and of questionable relevance to the Committee's stated purpose for the Rule 2004 Motion (i.e., investigation of PBBH's credit bid).  Such examples include:

> **Request for Production No. 21:** All documents and communications referring or relating in any way to the Debtors between or among the Debtors and any of the following: BlueMountain, Initial Purchasers, PBBH or Klein.
> **Request for Production No.25:** All documents and communications referring or relating to the relationship between Klein and Blue Mountain, Initial Purchaser, or PBBH or Klein.

Furthermore, several of the Examination Topics do not relate to the Rule 2004 Parties at all and are also vague, overbroad, and of questionable relevance in relation to the credit bid:

> 3.  Efforts to market the Debtors, interests in the Debtors or assets of the Debtors prepetition.   Efforts to market or conduct a sale process of the Debtors, interests in the Debtors or assets of the Debtors postpetition.
> 5.  Financing of the Debtors prepetition.
> 6.  Financing of the Debtors' postpetition.
> 7.  Transactions involving interests of the Former Prepetition First Lien Lenders relating to the Debtors.

Interestingly, notwithstanding the fact that the Rule 2004 Parties obviously should not be viewed as the Committee's best and primary source of information relating to many (if not most) of these requests, the Committee has directed the Rule 2004 Motion <u>only</u> against the Rule 2004 Parties, *i.e.*, the Debtors' DIP lender and stalking-horse bidder.  In addition, PBBH  believes that the Committee served these same requests informally on the Debtors and counsel for the parties from whom PBBH purchased the first lien debt.

### *The Committee Is Trying to Abuse Bankruptcy Rule 2004*

It is well-established that despite its broad scope, Bankruptcy Rule 2004 has its limits and must be both relevant and reasonable.  *See In re Johns–Manville, Corp.,* 42 B.R. 362, 364 (S.D.N.Y.1984) (finding that the examination of a witness about matters having no relationship or effect on the administration of an estate is improper); *see also Intercontinental Enters., Inc. v.*

*Keller (In re Blinder, Robinson & Co., Inc.),* 127 B.R. 267, 274 (D.Col.1991) ("the availability of Rule 2004 as a discovery tool is not unlimited."); *In re Symington,* 209 B.R. 678, 684 (Bankr. D. Md. 1997) (Rule 2004 examinations must be "both relevant and reasonable."); *see also, In re E. W. Resort Dev. V, L.P., L.L.L.P.*, No. 10-10452 (BLS), 2014 WL 4537500, at *7 (Bankr. D. Del. Sept. 12, 2014) (denying motion for 2004 examination when the intended use of examination was futile). Also, Rule 2004 examinations must relate to a debtor's financial condition and administration of the estate. *Deloitte & Touche v. Hassett (In re CIS Corp.)*, 123 B.R. 488, 490 (S.D.N.Y. 1991) (finding 2004 examination exceeded permissible scope because requests did not relate only to the liabilities and financial conditions of the debtor's estate).

The examination of an entity under Bankruptcy Rule 2004, "may only be used for the legitimate purpose of obtaining information relating to the 'acts, conduct or property, or to the liabilities and financial condition of the debtor, or any matter which may affect the administration of the debtor's estate, or to debtor's right to a discharge.'" *In re Express One Intl., Inc.*, 217 B.R. 215, 216 (Bankr, E.D. Tex. 1998) (citing Fed. R. Bankr. P. 2014). A Bankruptcy Rule 2004 examination cannot be used as a tool for abuse or harassment. *See, e.g., In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002) (courts will impose "limits on the use of Rule 2004 examinations where the purpose of the examination is to abuse or harass.")*; E. W. Resort Dev.,* 2014 WL 4537500, at *7 (Bankr. D. Del. Sept. 12, 2014); *In re Mittco, Inc.,* 44 B.R. 35, 36 (Bankr.E.D.Wisc.1984) (a court may "limit, condition or even forbid the use of Rule 2004" when it is used to "abuse or harass"); *In re Coffee Cupboard, Inc.,* 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991) ("Rule 2004 examinations may not be used to annoy, embarrass or oppress the party being examined").

It should be evident from both the Committee's tactics in connection with the filing of the Rule 2004 Motion and the extraordinary breadth of the production requests and examination topics that the Committee is not only attempting to inconvenience the Rule 2004 Parties, but also seeking to cause the Rule 2004 Parties to devote significant resources to responding to scorched-earth discovery on a compressed timeframe, all with the aim of trying to extract a payment from the Rule 2004 Parties. This is a perversion of Bankruptcy Rule 2004.

The Committee attempts to justify the filing of the Rule 2004 Motion and the corresponding need to expedite solely on the basis of a "loan to own" strategy by the Rule 2004 Parties. According to the Committee, the Rule 2004 Motion and the corresponding need to expedite is driven by the Committee's investigation of the credit bid rights of PBBH and by the July 13, 2018 deadline for objecting thereto. In this regard, as discussed below, the Rule 2004 Parties have proposed a simple solution to the Committee and the Debtors that should fully address the Rule 2004 Motion and the Committee's alleged concerns.

To be clear, the Committee cannot construct the false narrative of a nefarious "scheme" from the mere fact that a prepetition senior secured lender and DIP lender has opted to credit bid its debt for ownership of the Debtors' assets. Suffice to say, the Rule 2004 Parties did not invent this type of transaction. Moreover, the Rule 2004 Parties are quite confident that no cause exists to cap PBBH's credit rights under section 363(k) of the Bankruptcy Code or otherwise. The Committee also fails to explain how PBBH's credit bid relates to the Debtors' financial affairs or to the administration of estates.

*Proposal to Resolve 2004 Motion*

Because of the dynamics of this transaction and the timing of the Committee's 75-day investigation period – together with the fact that closing on a transaction will not occur until

completion of the 75-day investigation period – the Rule 2004 Parties have proposed the following compromise to the Committee and the Debtors:

(a) The Rule 2004 Parties will agree that the Committee has until conclusion of its 75-day DIP investigation period to object to PBBH's credit bid rights. No other dates under the current schedule would change.

(b) To the extent the Court limits PBBH's credit bid, PBBH would pay the difference in cash at closing, which cash will be payable to the first lien lenders up to the par value of the debt unless the Committee prevails in challenging PBBH's debt and lien position.

(c) The Debtors will take the lead in responding to the Committee's Rule 2004 requests, since most of the requests relate to the Debtors' activities. Once the Committee reviews the Debtors' production, the Committee can serve discovery on PBBH for the sole purpose of filling any gaps from the Debtors' production; provided, however that such request(s) must be relevant to the credit bid issue highlighted in the Rule 2004 Motion. This means that the Committee's discovery requests will be tailored on that issue and should avoid duplication of cost and effort.

(d) PBBH will modify the cross-default provisions in the DIP credit agreement so that there is no default if the Court caps our credit bid.

(e) PBBH will agree to an increase in the Committee's investigation budget to $100,000.00 and an increase in the overall Committee budget / carve-out to $410,000.00.

The foregoing accommodations should fully resolve the Committee's Rule 2004 Motion and many of the Committee's objections to the Final DIP Order, without prejudice to any parties. At a minimum, the proposals would alleviate any emergency that would require the Court to rule on the Rule 2004 Motion at the June 26 hearing.

### Conclusion

completion of the 75-day investigation period – the Rule 2004 Parties have proposed the following compromise to the Committee and the Debtors:

(a) The Rule 2004 Parties will agree that the Committee has until conclusion of its 75-day DIP investigation period to object to PBBH's credit bid rights. No other dates under the current schedule would change.

(b) To the extent the Court limits PBBH's credit bid, PBBH would pay the difference in cash at closing, which cash will be payable to the first lien lenders up to the par value of the debt unless the Committee prevails in challenging PBBH's debt and lien position.

(c) The Debtors will take the lead in responding to the Committee's Rule 2004 requests, since most of the requests relate to the Debtors' activities. Once the Committee reviews the Debtors' production, the Committee can serve discovery on PBBH for the sole purpose of filling any gaps from the Debtors' production; provided, however that such request(s) must be relevant to the credit bid issue highlighted in the Rule 2004 Motion. This means that the Committee's discovery requests will be tailored on that issue and should avoid duplication of cost and effort.

(d) PBBH will modify the cross-default provisions in the DIP credit agreement so that there is no default if the Court caps our credit bid.

(e) PBBH will agree to an increase in the Committee's investigation budget to $100,000.00 and an increase in the overall Committee budget / carve-out to $410,000.00.

The foregoing accommodations should fully resolve the Committee's Rule 2004 Motion and many of the Committee's objections to the Final DIP Order, without prejudice to any parties. At a minimum, the proposals would alleviate any emergency that would require the Court to rule on the Rule 2004 Motion at the June 26 hearing.

### *Conclusion*

It bears repeating that the Rule 2004 Motion is not an emergency and to the extent there is any urgency, it is self-created by the Committee. What is clear is that it is nothing more than harassment of the Rule 2004 Parties. However, because the Rule 2004 Parties would rather spend their time and resources focused on the Debtors and their business, instead of frivolous and wasteful discovery, the Rule 2004 Parties have chosen the path of accommodation, which ultimately benefits the Debtors' estates. The foregoing proposal was communicated to Committee counsel the morning of Sunday, June 24, attached hereto as Exhibit C.

*[The remainder of this page intentionally left blank]*

**WHEREFORE**, the PBBH respectfully requests that the Court deny the Rule 2004 Motion and deny the Committee's Motion to expedite, and grant such other and further relief as is just and proper.

Dated: June 25, 2018

        MORRIS, NICHOLS, ARSHT & TUNNELL LLP
        */s/ Derek C. Abbott*
        Derek C. Abbott (No. 3376)
        1201 North Market Street, 16th Floor
        P.O. Box 1347
        Wilmington, DE  19899-1347
        Telephone:  (302) 658-9200
        Facsimile:  (302) 658-3989

        -and-

        David A. Agay
        McDonald Hopkins
        300 N. LaSalle Street, Suite 1400
        Chicago, IL 60654
        Telephone:  (312) 642-2217
        Facsimile: (312) 280-8232
        Email:  dagay@mcdonaldhopkins.com

        Scott N. Opincar
        Michael J. Kaczka
        McDonald Hopkins
        600 Superior Avenue, East, Suite 2100
        Cleveland, OH 44114
        Telephone:  (216) 348-5400
        Email:  sopincar@mcdonaldhopkins.com
                   mkaczka@mcdonaldhopkins.com

        *Counsel to Project Build Behavioral Health LLC*