**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>EBH TOPCO, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 18-11212 (BLS)<br><br>(Jointly Administered)<br><br>**Hearing Date: February 28, 2019 at 11:00 a.m. (ET)**<br>**Proposed Objection Deadline: February 21, 2019 at 4:00 p.m. (ET)** |

**THIRD MOTION OF DEBTORS FOR ENTRY OF AN ORDER
(I) AUTHORIZING THE DEBTORS TO AMEND THE DIP CREDIT
AGREEMENT TO OBTAIN SUPPLEMENTAL FINANCING, AND
(II) AMENDING THE FINAL DIP ORDERS ON ACCOUNT OF
<u>SUCH AMENDMENT</u>**

The above-captioned debtors and debtors in possession (the "**Debtors**") hereby move (the "**Motion**"), pursuant to sections 105, 361, 362, 363, and 364 of title 11 of the United States Code (the "**Bankruptcy Code**"); Rules 2002, 4001, and 9014 of Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rules**"); and Rules 2002-1, 4001-1, 4001-2, and 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**") for entry of an order, substantially in the form of <u>Exhibit C</u> attached hereto (the "**Proposed Order**"), (i) authorizing the Debtors to execute and deliver the Second Amendment to the DIP Credit Agreement (as defined below), attached hereto

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are EBH Topco, LLC (6103), Elements Behavioral Health, Inc. (7176), EBH Holding Company, Inc. (0370), EBH Big Rock, Inc. (1880), SoCal Rehab and Recovery, Inc. (3741), The Sexual Recovery Institute, Inc. (1279), Westside Sober Living Centers, Inc. (5717), Ehrman Subsidiary Corp. (3958), PROMAL2, Inc. (1377), PROMAL4, Inc. (2453), SBAR2, Inc. (9844), Promises Residential Treatment Center VI, Inc. (1112), Assurance Toxicology Services, LLC (9612), Elements Screening Services, Inc. (0055), TRS Behavioral Care, Inc. (6343), Spirit Lodge, LLC (1375), San Cristobal Treatment Center, LLC (1419), EBH Acquisition Subsidiary, Inc. (6132), EBH Services of Florida, Inc. (6802), Outpatient Services FL, Inc. (9596), EBH Northeast Services, Inc. (3551), Intensive Outpatient Services PA, Inc. (5581), Wrightsville Services, LLC (9535), NE Sober Living, Inc. (1955), Northeast Behavioral Services, Inc. (8881), The Ranch on Piney River, Inc. (0195), Outpatient Services TN, Inc. (5584), EBH Southwest Services, Inc. (5202), Elements Medical Group of Utah, Inc. (9820), Southeast Behavioral Health Services, Inc. (1267), Elements Medical Group of Mississippi, Inc. (4545), and Elements Medical Group of Arizona, Inc. (8468). The Debtors' mailing address is 5000 Airport Plaza Dr., Suite 100, Long Beach, California 90815.

as Exhibit A, to obtain Second Supplemental Financing (as defined below), and (ii) amending the Final DIP Orders (as defined below). In support of the Motion, the Debtors rely upon the *Declaration of Martin McGahan, Chief Restructuring Officer of EBH Topco, LLC, in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 16] (the "**First Day Declaration**") and the *Declaration of Anthony Horvat in Support of Motion of Debtors for Entry of an Order (I) Authorizing the Debtors to Amend the DIP Credit Agreement to Obtain Supplemental Financing, and (II) Amending the Final DIP Order on Account of Such Amendment* (the "**Horvat Declaration**"), attached hereto as Exhibit B. In further support of the Motion, the Debtors, by and through their undersigned counsel, respectfully represent:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over the Chapter 11 Cases (the "**Chapter 11 Cases**") and this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012. This is a core proceeding under 28 U.S.C. § 157(b). Under Local Rule 9013-1(f), the Debtors consent to entry of a final order under Article III of the United States Constitution.

2. Venue is proper in this District under 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief requested herein are Bankruptcy Code sections 105, 361, 362, 363, and 364; Bankruptcy Rules 2002, 4001, and 9014; and Local Rules 2002-1, 4001-1, 4001-2, and 6004-1.

## BACKGROUND

**A.    General Background**

4. On May 23, 2018 (the "**Petition Date**"), each of the Debtors filed a voluntary petition in this Court commencing a case for relief under chapter 11 of the Bankruptcy Code.

The factual background regarding the Debtors, including their business operations, their capital and debt structures, and the events leading to the filing of the Chapter 11 Cases, is set forth in detail in the First Day Declaration and is fully incorporated herein by reference.

5. The Debtors continue to manage and operate their business as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108. No trustee or examiner has been requested in the Chapter 11 Cases.

6. On June 6, 2018, the Office of the United States Trustee for the District of Delaware appointed an official committee of unsecured creditors in the Chapter 11 Cases (the "**Committee**").

7. On July 24, 2018, the Court entered the *Order (I) Approving the Asset Purchase Agreement Between the Debtors and the Purchaser, (II) Authorizing the Sale to the Purchaser of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (III) Authorizing the Assumption and Assignment of Contracts, and (IV) Granting Related Relief* [Docket No. 313] (the "**Sale Order**"). Among other things, the Sale Order approved the sale of substantially all of the Debtors' Assets (the "**Sale**") to Project Build Behavioral Health ("**PBBH**" or the "**DIP Lender**").

8. On November 27, 2018, the Debtors filed the *Combined Disclosure Statement and Chapter 11 Plan of Liquidation of EBH Topco, LLC*, et al. [Docket No. 589] (the "**Combined Plan and Disclosure Statement**"). On November 28, 2018, the Court entered the *Order (I) Approving the Adequacy of the Disclosures in the Combined Plan and Disclosure Statement on an Interim Basis, (II) Scheduling the Confirmation Hearing and Deadline for Filing Objections, (III) Establishing Procedures for the Solicitation and Tabulation of Votes to Accept or Reject the Combined Plan and Disclosure Statement, (IV) Approving the Form of*

*Ballot and Solicitation Package, and (V) Approving the Notice Provisions* [Docket No. 593] (the "**Interim Approval and Procedures Order**").

### B. The DIP Financing

9. On the Petition Date, the Debtors filed the *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Secured Postpetition Financing, (II) Authorizing the Use of Cash Collateral, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, (V) Setting a Final Hearing, and (VI) Granting Related Relief* [Docket No. 15] (the "**First DIP Motion**").

10. On June 28, 2018, the Court entered the *Final Order (I) Authorizing Debtors to Obtain Secured Postpetition Financing, (II) Authorizing the Use of Cash Collateral, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, (V) Setting a Final Hearing, and (VI) Granting Related Relief* [Docket No. 228] (the "**Final DIP Order**").[2]

11. Among other things, the Final DIP Order authorized the Debtors to enter into the DIP Credit Agreement, pursuant to which the Debtors were able to borrow up to an aggregate amount of $14,900,000 (the "**Original DIP Facility**"). The Final DIP Order also provided that the DIP Credit Agreement's original maturity date would be amended to August 31, 2018.

12. While the Original DIP Facility expired by its own terms on August 31, 2018, through a series of stipulations, the Court approved the Debtors' use of Cash Collateral on a consensual basis through October 12, 2018 pursuant to a modification of the DIP Credit Agreement and Final DIP Order.[3]

---

[2] Capitalized terms not otherwise defined shall have the meanings ascribed to them in the Final DIP Order.

[3] *Order Approving Stipulation Authorizing and Consenting to Use of Cash Collateral Pursuant to a Revised Budget* [Docket No. 392]; *Order Approving Second Stipulation Authorizing and Consenting to Use of Cash Collateral Pursuant to a Revised Budget* [Docket No. 420]; *Order Approving Third Stipulation Authorizing and Consenting to Use of Cash Collateral Pursuant to a Revised Budget* [Docket No. 432]; and *Order Approving Fourth Stipulation Authorizing and Consenting to Use of Cash Collateral Pursuant to a Revised Budget* [Docket No. 486].

13. On October 11, 2018, the Debtors filed the *Second Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to Amend the DIP Credit Agreement to Obtain Supplemental Financing, and (II) Amending the Final DIP Order on Account of Such Amendment* [Docket No. 503] (the "**Second DIP Motion**", and together with the First DIP Motion, the "**DIP Motions**").

14. On November 27, 2018, the Court entered the *Final Supplemental Order (I) Authorizing the Debtors to Amend the DIP Credit Agreement to Obtain Supplemental Financing, and (II) Amending the Final DIP Order on Account of Such Amendment* [Docket No. 588] (the "**Final Supplemental DIP Order**" and together with the Final DIP Order, the "**Final DIP Orders**").

15. The Final Supplemental DIP Order authorized an amendment to the DIP Credit Agreement (the "**First Amendment**") which allowed the Debtors to borrow up to a supplemental amount of $15,000,000 (the "**Supplemental DIP Facility**", and together with the Original DIP Facility, the "**DIP Facility**"). Pursuant to the First Amendment, the DIP Facility has a maturity date of January 25, 2019 (as modified, the "**Maturity Date**").

16. The Final Supplemental DIP Order required that the Debtors, the Committee, and the DIP Lender meet and confer to discuss additional financing before December 1, 2018. The parties held several meet and confers since entry of the Supplemental DIP Order.

17. On January 22, 2019, the Court entered the *Order Approving Stipulation Authorizing and Consenting to Use of Cash Collateral Pursuant to a Revised Budget* [Docket No. 704] which extended the Maturity Date to January 31, 2019. On February 5, 2019, the Court entered the *Order Approving Second Stipulation Authorizing and Consenting to Use of Cash*

66683147.5

*Collateral Pursuant to a Revised Budget* [Docket No. 748] which extended the Maturity Date to February 8, 2019.

C.      **The Proposed DIP Credit Agreement Amendments**

18.     The Debtors have determined, in their sound business judgment, that additional postpetition financing in an amount up to $1,100,00.00 (the "**Second Supplemental Financing**") is required to fund the Chapter 11 Cases through the closing of the approved Sale to PBBH and confirmation of the Combined Plan and Disclosure Statement. To that end, the Debtors seek approval to enter the Second Amendment to the DIP Credit Agreement (the "**Second Amendment**").

19.     The Second Amendment specifically contemplates the following material changes:

   a.   amending the Commitment and Total Commitment to reflect the Second Supplemental Financing; and

   b.   extending the Maturity Date to March 31, 2019, or the Effective Date (as defined in the Combined Plan and Disclosure Statement).

20.     As described in the First Day Declaration and supplemented by the Horvat Declaration, the Debtors require postpetition financing to fund operations and administrative claims during the pendency of the Chapter 11 Cases.

21.     In light of the Debtors' current financial condition and prepetition debt structure, the Debtors are unable to obtain financing from sources other than the DIP Lender on terms more favorable than the Second Amendment and are unable to obtain adequate unsecured credit allowable as an administrative expense under Bankruptcy Code section 503(b)(1). The Debtors are also unable to obtain unsecured credit with administrative priority under Bankruptcy Code section 364(c)(1) or 364(d). After considering all alternatives, the Debtors have concluded, in the

exercise of their sound business judgment, that the Second Amendment represents the best financing available to the Debtors at this time.

## SUMMARY TERMS OF THE DIP LOAN

22. The Debtors, pursuant to Bankruptcy Rule 4001 and Local Rule 4001-2 made certain required disclosures of postpetition financing provisions in the DIP Motions. To the extent necessary, the Debtors incorporate by reference herein that summary, as may be modified by the terms of the Final Orders and Second Amendment.

## BASIS FOR RELIEF

### A.    The Terms of the Second Amendment Are Fair and Reasonable

23. The terms and conditions of the Second Amendment are fair and reasonable under the circumstances. The DIP Credit Agreement and Second Amendment were negotiated by the parties in good faith and at arm's length. As previously detailed in the DIP Motions, the Debtors were unable to obtain postpetition financing on better terms. Due to the complicated regulatory approval process required before the approved Sale may close, the Debtors require additional postpetition financing prior to closing. The Second Supplemental Financing will provide the Debtors with the liquidity necessary to operate its business in the ordinary course during the pendency of the Chapter 11 Cases, thus preserving the value of the estates.

24. The Second Supplemental Financing will also allow the Debtors to confirm the Combined Plan and Disclosure Statement, as agreed to by PBBH, the Committee, and the Debtors pursuant to the Global Settlement Term Sheet attached as Exhibit 2 to the Sale Order.

25. Bankruptcy Code section 364 permits debtors to obtain secured or superpriority postpetition financing when unsecured credit is not available. 11 U.S.C. § 364(c). Bankruptcy courts, after notice and a hearing, may also authorize postpetition credit secured by a senior or equal lien on encumbered property if the debtor cannot obtain credit elsewhere and the interests

7

of existing lienholders are adequately protected. 11 U.S.C. § 364(d); *see also In re Plabell Rubber Prods., Inc.*, 137 B.R. 897, 900 (Bankr. N.D. Ohio 1992) (the debtor must show "by a good faith effort that credit was not available without" the protections of section 364(c)); *In re Crouse Grp., Inc.*, 71 B.R. 544, 549 (Bankr. E.D. Penn. 1987) (applying three elements with regard to financing pursuant to Bankruptcy Code section 364(c): (1) that the debtors were unable to obtain financing on an unsecured administrative expense priority basis under section 364(b); (2) that the credit "was transaction was necessary to preserve the assets of the estate"; and (3) that the terms were fair, reasonable, and adequate under the circumstances).

26. Debtors are not obligated and have "no duty to seek credit from every possible lender before concluding that such credit is unavailable." *Bray v. Shenandoah Fed. Say. & Loan Ass'n. (In re Snowshoe Co.)*, 789 F.2d 1085, 1088 (4th Cir. 1986); *see also In re 495 Cent. Park Ave. Corp.*, 136 B.R. 626, 630 (Bankr. S.D.N.Y. 1992). When there are few lenders likely, able, or willing to extend the necessary credit to the debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct such an exhaustive search for financing." *In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), *aff'd sub nom.*, *Anchor Say. Bank FSB v. Sky Valley, Inc.*, 99 B.R. 117,120 n.4 (N.D. Ga. 1989), s*ee also In re Mid-State Raceway, Inc.*, 323 B.R. 40, 58 (Bankr. N.D.N.Y. 2005); *Ames*, 115 B.R. at 37-39; *In re Stanley Hotel, Inc.*, 15 B.R. 660, 663 (D. Colo. 1981); *In re Garland Corp.*, 6 B.R. 456, 461 (B.A.P. 1st 1980).

27. Here, the Debtors, after consultation with their professionals, determined additional funding was needed. As the Court found with respect to the DIP Documents, the Debtors have exercised their sound business judgment with regard to the Second Amendment and Second Supplemental Financing. For the same reasons set forth in the DIP Motions, the Debtors are unable to find postpetition financing available on better terms. Further, the Final

Orders granted PBBH certain postpetition and replacement liens. Obtaining additional funding on an unsecured basis is not possible given the realities of the Chapter 11 Cases. Absent consent from PBBH and the Prepetition Second Lien Lender, any secured postpetition funding from another source would have to fully pay-off the Senior Secured Claim, the Junior Secured Claim, and the DIP Facility.

28. The Court previously found that the DIP Credit Agreement contained reasonable terms and conditions and no financing was available on more favorable terms. As such, the Debtors determined the only possible source of additional funding was PBBH.[4] However, the Debtors still negotiated the terms and conditions of the Second Amendment fully, arriving at an amendment to the DIP Credit Agreement which is fair and reasonable under the circumstances.

**B. The Debtors Should be Authorized to Obtain Postpetition Financing Secured by a Priming Lien**

29. When a debtor is unable to secure postpetition financing pursuant to Bankruptcy Code section 364(c), the debtor may obtain authorization from the Court to obtain financing secured by a senior or equal lien on encumbered property of the estate (*i.e.*, a "priming" lien). 11 U.S.C. § 364(d). A superpriority senior secured priming lien is only available if (a) the Debtor is otherwise unable to obtain credit; and (b) the interests of existing secured creditors are adequately protected. *Id; see also In re 495 Cent. Park Ave. Corp.*, 135 B.R. 626, 630-31 (Bankr. S.D.N.Y. 1992).

30. Debtors may only obtain postpetition financing "secured by a senior or equal lien on property of the estate that is subject to a lien only if" adequate protection is provided to parties whose liens are primed. 11 U.S.C. § 364(d)(1)(B). Bankruptcy Code section 361 delineates the forms of adequate protection, which include periodic cash payments, additional

---

[4] In fact, the Final Orders and DIP Credit Agreement provide that if the Debtors move to obtain financing from any other source, an Event of Default is triggered.

liens, replacement liens, and other forms of relief. Adequate protection is determined on a case-by-case basis and may take various forms. *See, e.g.*, *In re Continental Airlines, Inc.*, 154 B.R. 176, 180-81 (Bankr. D. Del. 1993); *MBank Dallas., N.A. v. O'Connor (In re O'Connor)*, 808 F.2d 1393, 1396-97 (10th Cir. 1987); *Martin v. U.S. (In re Martin)*, 761 F.2d 472, 474 (8th Cir. 1985); *In re Shaw Indus., Inc.*, 300 B.R. 861, 865 (Bankr. W.D. Pa. 2003). The focus of this requirement is to protect a secured creditor from diminution in the value of its interest in the particular collateral during the period of use. *See In re Swedeland Dev. Grp., Inc.*, 16 F.3d 552, 564 (3d Cir. 1994) ("The whole purpose of adequate protection for a creditor is to insure that the creditor receives the value for which he bargained prebankruptcy."); *In re Carbone Cos.*, 395 B.R. 631, 635 (Bankr. N.D. Ohio 2008) ("The test is whether the secured party's interest is protected from diminution or decrease as a result of the proposed use of cash collateral."); *In re Cont'l Airlines, Inc.*, 154 B.R. at 180-81 (holding that adequate protection for use of collateral under section 363 is limited to use-based decline in value).

31.     In the instant case, the Court has already approved consensual priming liens under the DIP Facility. By this Motion, the Debtors request that the Court approve the extension of the priming liens previously authorized to the Second Supplemental Financing and Second Amendment. As set forth in the DIP Motions, both PBBH, as the Prepetition First Lien Lender, and the Prepetition Second Lien Lenders have been deemed to consent to this priming. The Final Orders provide for adequate protection packages to PBBH as Prepetition First Lien Lender and DIP Lender, and to the Second Lien Lenders.[5] This ensures that PBBH and the Second Lien Lenders were compensated to the extent of any diminution in the value of their respective

---

[5] Additionally, because PBBH and the Prepetition Second Lien Lenders consented to the DIP Facility, the burden of demonstrating adequate protection is obviated. *See Anchor Sav. Bank FSB v. Sky Valley, Inc.*, 99 B.R. 117, 122 (N.D. Ga. 1989) ("by tacitly consenting to the superpriority lien, those [undersecured] creditors relieved the debtor of having to demonstrate that they were adequately protected.")

66683147.5

prepetition collateral. The Second Amendment does not modify these adequate protection packages.

C.  **The Debtors Have Met the Business Judgment Standard**

32. With regarding to obtaining postpetition financing, debtors who utilize their sound business judgment are permitted considerable deference, so long as the postpetition financing does not conflict with the policies underlying the Bankruptcy Code. *See, e.g.*, *Trans World Airlines, Inc. v. Travellers Int'l AG (In re Trans World Airlines, Inc.)*, 163 B.R. 964, 974 (Bankr. D. Del. 1994) (approving postpetition loan and receivable facility because they "reflect[ed] sound and prudent business judgment"); *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("cases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit parties in interest."); *see also Richmond Leasing Co. v. Capital Bank N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985) ("[m]ore exacting scrutiny [of the debtor's business decisions] would slow the administration of the debtors' estate and increase its cost, interfere with the Bankruptcy Code's provision for private control of administration of the estate and threaten the court's ability to control a case impartially."). Further, "courts will almost always defer to the business judgment of a debtor in the selection of a lender." *In re L.A. Dodgers LLC*, 457 B.R. 308, 313 (Bankr. D. Del. 2011).

33. To determine whether a debtor has met the business judgment standard, a court need only "examine whether a reasonable business person would make a similar decision under similar circumstances." *In re Exide Techs.*, 340 B.R. 222, 239 (Bankr. D. Del. 2006), *rev'd on other grounds* 607 F.3d 957 (3d Cir. 2010); *see also In re Curlew Valley Assocs.*, 14 B.R. 506, 511-14 (Bankr. D. Utah 1981) (noting that courts generally will not second-guess a debtor in

11

possession's business decisions when those decisions involve "a business judgment made in good faith, upon a reasonable basis, and within the scope of his authority under the Code."). This inquiry involves the consideration of whether the terms are fair when considering the terms in light of the relevant circumstances of the debtor and the potential lender. *In re Farmland Indus., Inc.*, 294 B.R. 855, 881 (Bankr. W.D. Mo. 2003). Courts may also look to noneconomic benefits of postpetition financing. *See, e.g.*, *In re Ion Media Networks, Inc.*, No. 09-13125, 2009 WL 2902568, at *4 (Bankr. S.D.N.Y. July 6, 2009) ("Although all parties, including the Debtors and the Committee, are naturally motivated to obtain financing on the best possible terms, a business decision to obtain credit from a particular lender is almost never based purely on economic terms. Relevant features of the financing must be evaluated, including non-economic elements such as the timing and certainty of closing, the impact on creditor constituencies and the likelihood of a successful reorganization. This is particularly true in a bankruptcy setting where cooperation and established allegiances with creditor groups can be a vital part of building support for a restructuring that ultimately may lead to a confirmable reorganization plan. That which helps foster consensus may be preferable to a notionally better transaction that carries the risk of promoting unwanted conflict.").

34.  The Debtors submit that it is within their sound business judgment to enter into the Second Amendment. Absent access to the Second Supplemental Financing, the Debtors would be unable to, among things, fund the Chapter 11 Cases, including the agreed-upon Combined Plan and Disclosure Statement process. The Debtors would also be unable to meet ordinary course obligations as they come due, thus seriously harming the estates and rendering them administratively insolvent. The Debtors have determined that it is in the best interests of the

Debtors, their estates, creditors, and other parties in interest to enter into the Second Amendment modifying certain terms of the DIP Credit Agreement,

35. Therefore, the Debtors submit that the terms of the Second Amendment are fair, reasonable, and appropriate, and the DIP Lender should be accorded the benefits of Bankruptcy Code section 364(e) in respect of the DIP Facility as modified by the Second Amendment.

## NOTICE

36. Notice of this Motion will be given to: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the Prepetition First Lien Lender and DIP Lender; (c) the Debtors' prepetition lenders; (d) any party that has requested notice pursuant to Bankruptcy Rule 2002; and (e) all parties entitled to notice pursuant to Local Rule 9013-1(m). The Debtors submit that, under the circumstances, no other or further notice is required.

## NO PRIOR REQUEST

37. No previous request for the relief sought herein has been made to this Court or any other Court.

**WHEREFORE**, for the reasons stated herein, the Debtors respectfully request that the Court enter the Proposed Order substantially in the form attached hereto as Exhibit C, granted the relief requested in this Motion, and granting such other relief as the Court deems just and proper.

| | |
|---|---|
| Dated: February 7, 2019<br>Wilmington, Delaware | Respectfully submitted,<br><br>**POLSINELLI PC**<br><br>*/s/ Christopher A. Ward*<br>Christopher A. Ward (Del. Bar No. 3877)<br>Shanti M. Katona (Del. Bar No. 5352)<br>Stephen J. Astringer (Del. Bar No. 6375)<br>222 Delaware Avenue, Suite 1101<br>Wilmington, Delaware 19801<br>Telephone: (302) 252-0920<br>Facsimile: (302) 252-0921<br>cward@polsinelli.com<br>skatona@polsinelli.com<br>sastringer@polsinelli.com |

14

66683147.5